Elizabeth A. SMITH, Maureen I. Angelas, Tacie S. Dejanikus, Karen A. Zimmerman, Sarah M. Shulman and Stephanie L. Roth, Appellants,

v.

UNITED STATES, Appellee.

Nos. 81–1442 and 81–1585 to 81–1589.

District of Columbia Court of Appeals.

Argued Jan. 13, 1983.

Decided April 28, 1983.

---

Kimberly Berger, law student counsel, with whom Lois Yankowski, Washington, D.C., was on brief, for appellants.

Joseph Michael Hannon, Jr., Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell and Bruce A. Peterson, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and NEBEKER and PRYOR, Associate Judges.

PER CURIAM:

Appellants' primary assertions on this appeal are that they were selectively prosecuted after causing a disturbance at a Senate subcommittee hearing and that the trial court committed error by denying both their requests for an instruction and their motion for judgment of acquittal.[1] Finding the trial court committed no error in either of these areas, we affirm.

This case stems from two incidents that occurred on April 23, 1981, during a Senate Subcommittee hearing on the "Human Life" Bill. The hearing was before the Subcommittee on Separation of Powers of the Senate Judiciary Committee and was chaired by Senator East. In the first incident three of the appellants stood up on their chairs, took out signs, and chanted, among other things, "stop this committee." Senator East gaveled and the Capitol Police escorted the appellants out of the hearing room. They were subsequently arrested. About 20 minutes later the other three appellants took almost identical actions with the same consequences. Appellants were

---

1. They also claim the trial court erred when it denied their discovery motion, and that statements made by the prosecutor during his closing argument were improper and sufficiently prejudicial to warrant reversal. We find no reversible error in any of these or any other of appellants' contentions.

charged with violating D.C.Code § 9–112(b)(4) (1981).[2] Before trial appellants moved to dismiss charges alleging selective prosecution and sought discovery in support of their motion to dismiss. Both motions were denied by the trial court after an evidentiary hearing held on July 6, 1981. Trial began on September 24, 1981. At the close of the government's case, the defense moved for a judgment of acquittal. This motion was denied. Prior to jury instructions defense counsel requested a special instruction with respect to the terms "willingly" and "knowingly" based on an instruction given in *Arshack v. United States*, 321 A.2d 845 (D.C.1974). The trial court declined to give the instruction. On September 29, 1981, the jury found all appellants guilty as charged.

 The government cannot discriminate between similarly situated persons when deciding whom to prosecute. If a law is not applied evenhandedly, a violation of equal protection of the laws as established by the fourteenth amendment to the Constitution, occurs. *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886).[3] But a party who charges discriminatory enforcement of a valid statute carries a heavy burden of proof. *Davis v. United States*, 390 A.2d 976, 980 (D.C. App.1978). The appellant must make a prima facie showing that: (1) others similarly situated were not prosecuted, and (2) the selective prosecution being complained of was improperly motivated, i.e., it was based on an impermissible consideration such as race or on a desire to prevent the exercise of constitutional rights. *David, supra,* 390 A.2d at 980; *Attorney General of the United States v. Irish People Inc.,* 221 U.S.App. D.C. 406, 410, 684 F.2d 928, 932 (D.C.Cir. 1982); *United States v. Berrios,* 501 F.2d 1207, 1211–12 (2d Cir.1974).

 At the hearing the appellants claimed that they were prosecuted when others similarly situated were not. They sought to show that the improper motivation behind the prosecution was a desire to prevent them from expressing pro-abortion views. In support thereof they resorted to an analysis of the Capitol Police arrest and incident reports. There were 30 reports covering incidents and arrests under D.C. Code § 9–112(b)(4) involving 56 persons from the years 1973–1981. The trial court concluded that the reports did not establish a prima facie case of selective prosecution. The court summed up the reports by saying that of the 56 persons involved, 40 were arrested and of those arrested, 18 were females like appellants, 34 were shouters like appellants, and 11 others were signholders like appellants. Between 14 and 39 of those persons arrested were actually prosecuted.[4]

The trial court also rejected appellants' argument that the only incidents which provided any meaningful comparison to their own were those that occurred in hearings and not in the Congressional gallery. The

---

2. At the time of trial this statute was D.C.Code § 9–123(b)(4) (1973). D.C.Code § 9–112 reads as follows:

> § 9–112. Same—Unlawful conduct.
> * * * * * *
> (b) It shall be unlawful for any person or group of persons willfully and knowingly:
> * * * * * *
> (4) To utter loud, threatening, or abusive language, or to engage in any disorderly or disruptive conduct, at any place upon the United States Capitol Grounds or within any of the Capitol Buildings with intent to impede, disrupt, or disturb the orderly conduct of any session of the Congress or either House thereof, or the orderly conduct within any such building of any hearing before, or any deliberations of, any committee or sub-

committee of the Congress or either House thereof;
> * * * * * *

3. While the fourteenth amendment does not apply to the District of Columbia (being applicable only to the states), the fifth amendment due process clause contains equal protection principles. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). On the issue of discriminatory enforcement of a valid statute, we find these constitutional provisions to be co-extensive.

4. Most of the police reports did not indicate whether the offenders were prosecuted after arrest.

trial judge called this the "classic distinction without a difference" since a Captain of the Capitol Police testified that they used the same operating procedures in both settings and because D.C.Code § 9–112(b)(4) covers both places. But the court also noted that even if such a distinction were valid no conclusions would be drawn because the sample of incidents occurring in hearings was too small.

Based on these factors, the trial court ruled that appellants had failed to establish a prima facie case of selective prosecution and denied the motion to dismiss.

The trial court did not err in this ruling. The facts contained in the Capitol Police reports failed to show that appellants had been discriminatorily prosecuted. Neither did the court err when it refused to permit appellants discovery after they had failed to establish a prima facie case of selective prosecution. Since appellants must prove *both* that they were selectively prosecuted *and* that the prosecution was improperly motivated, there is no need to grant discovery as part of an effort to prove the latter if the former cannot be proven. *See Irish People, supra,* 221 U.S.App.D.C. at 425–26, 684 F.2d at 947–48, and *Berrios, supra,* 501 F.2d at 1211.

■ On appeal appellants almost seem to concede that they failed to establish a prima facie case of selective prosecution at the evidentiary hearing. But now they argue that the trial court should have granted them discovery without requiring that they make a prima facie showing that significant numbers of other similarly situated persons were not prosecuted. We reject this contention. We agree with the U.S. Court of Appeals for this Circuit when they held:

> If, as the district court found, there was no one to whom defendant could be compared in order to resolve the question of selection, then it follows that defendant has failed to make out one of the elements of its case. Discrimination cannot exist in a vacuum; it can be found

only in the unequal treatment of people in similar circumstances. Where defendant cannot show anyone in a similar situation who was not prosecuted, it has been held that he has not "met even the threshold point of the *Yick Wo* doctrine— 'official discrimination ... between persons in similar circumstances, material to their rights ....' " Thus, if we accept the district court's conclusion that few are "similarly situated" with defendant—a tenuous assertion, in light of our discussion below of past registrations— we would not find for defendant.

*Irish People, supra,* 221 U.S.App.D.C. at 424, 684 F.2d at 946.

Applying the above reasoning of the circuit court to the instant case indicates that the trial court did not err when it denied both of appellants' motions.

■ Appellants also claim the trial court erred by denying the motion for judgment of acquittal at trial and by refusing to give the particularized instruction they asked for with respect to the terms "willingly" and "knowingly." They argue that because D.C.Code § 9–112(b)(4) requires a person or persons to knowingly and willingly disrupt a session of Congress, that section of the D.C.Code is not violated unless the alleged violators had prior knowledge of its existence. Based on this theory appellants claim their motion for judgment of acquittal should have been granted or alternatively that the trial court should have given the specialized instruction they requested.

Appellants cite *Arshack, supra,* 321 A.2d 845, to support the proposition that the terms "knowingly" and "willingly" require that persons know of the existence of D.C. Code § 9–112(b)(4) before it can be violated. The special jury instruction which appellants requested at trial was the one given by the trial court in that case.

In *Arshack* the defendants were arrested for violating D.C.Code § 9–112(b)(5) when they obstructed the halls of Congress.[5] The

---

5. D.C.Code § 9–112(b)(5) makes it unlawful for any group to "knowingly and willingly ... ob- struct, or to impede passage through or within

trial judge there gave the following instruction with respect to the terms "willful" and "knowingly":

The term "willful" as used in the statute means that the act was committed by the defendants voluntarily, with knowledge that it was prohibited by a law and with the purpose of violating the law and not by mistake, accident, or in good faith. To act willfully means to do an act without a lawful excuse.

The word "knowingly" as used in the statute means that the defendants acted voluntarily and purposely and not because of a mistake or an accident or through inadvertence.

*Arshack, supra,* 321 A.2d at 852.

On review we found no error prejudicial to the *defense* in the instruction and commented that the "statutory requirement[s] of willfullness [and knowledge] are satisfied if the accused acted intentionally, with knowledge that he was breaking the statute." *Id.* (citing *United States v. Moylan,* 417 F.2d 1002, 1004 (4th Cir.1969)). *Arshack* is not authority for the proposition that the accused must have known of the statute's existence before D.C.Code § 9–112 can be violated. In cases of alleged viola-

tions of § 9–112(b)(5), a defendant only has to intend to impede passage through the hallways of Congress. This court was saying nothing more in *Arshack* than that the instruction the trial court gave was in no way prejudicial to the *defendants* but was an adequate response to the specific instruction which they requested. Similarly, in order to violate D.C.Code § 9–112(b)(4) the appellants had to intend to disrupt a session of Congress. The appellants asked the trial judge to give the instruction that was given in *Arshack* but she declined to do so. Instead she gave the following:

An act is done willingly and knowingly if it is done voluntarily, purposefully and deliberately and with intent to violate the law, and not because of mistake or accident or inadvertently.

This instruction was sufficient to satisfy the requirements of D.C.Code § 9–112(b)(4).

*Affirmed.*

the United States Capitol grounds or any of the

Capitol Buildings;".