Jerry J. DiGIOVANNI, Appellant,

v.

UNITED STATES, Appellee.

No. 88–1435.

District of Columbia Court of Appeals.

Argued June 14, 1990.
Decided Sept. 26, 1990.

---

M. Elizabeth Kent, appointed by this court, for appellant.

Kathleen A. Felton, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

Appellant was convicted of receiving stolen property in violation of D.C.Code § 22–3832 (1989 Repl.). He argues that the judge improperly refused to instruct the jury that it must find that the property had been received with the intent to defraud. We affirm.

In November of 1987, a Victorian brownstone row house located at 1301 Euclid Street, N.W., was for sale as part of the estate of Anna M. DeWeese. The house was in the control of Crestar Bank, which had designated one of its trust real estate administrators, John Nolte, to market it. Nolte had visited the house on numerous occasions, maintaining it and showing it to prospective buyers. On November 27, Nolte showed the house to a purchaser and noticed nothing amiss. On Nolte's next visit, November 30, 1987, he discovered that the house had been burglarized. The items taken were two fireplace mantels, twenty-two light fixtures, five French doors, and a set of cast iron driveway gates.

Appellant was a regular supplier of antique house parts to the Brass Knob and the Canal Company, both architectural antique stores. On November 28, 1987, he sold four French doors, two cast iron driveway gates, and several light fixtures to the Brass Knob. He told the store's owner that all of these items had come from a house on Fairmont Street. On that day, appellant also sold a double mantel and one French door to the Canal Company. He told the owner the property had come from a building at 1327 F Street, N.W. The next day appellant returned to the Canal Company and sold a second mantel which he said had come from a building at 1331 Fairmont Street.

Police Sergeant William Manning was investigating the 1301 Euclid Street burglary. He knew that appellant did salvage work in the neighborhood and that the Canal Company bought items similar to those stolen from 1301 Euclid Street. Immediately after the burglary was reported, Ser-

geant Manning contacted the Canal Company and discovered that appellant had sold property to them in the last few days. He asked that the items be held until one of the investigators could check them.

After the police contacted the Canal Company, appellant stopped by and inquired about the hold stickers on the property. The owner told appellant the police said the property was stolen. Contrary to his initial assertion that he obtained most of the property from 1327 F Street, appellant now claimed that he obtained all of the property from 1331 Fairmont Street. He later claimed that he had bought all of the items from a truck parked at 1331 Fairmont Street and, although appellant never produced them, that he had receipts for the property.

On the next day appellant stopped by the Brass Knob and heard that the police said the property there was also stolen. He told the owners that he had bought the property from a junk dealer's truck in the 1300 block of Fairmont Street. Later, he told one of the owners another tale, that he had bought the property from some drug dealers, whose names he did not know, but whom he knew he could find.

On December 2, 1987, Detective Randall and Mr. Nolte identified both of the mantels and the French door at the Canal Company as having been stolen from 1301 Euclid Street. They also checked at the Brass Knob and identified the French doors, the driveway gates, and the light fixtures which appellant had brought on November 28 as property stolen from 1301 Euclid Street.

At trial, the construction manager for 1331 Fairmont Street, located just one block from 1301 Euclid Street, contradicted appellant's claim that he had obtained the property from the house at 1331 Fairmont. Although the construction manager had hired appellant to remove trash after November 19, he testified that none of the items removed by appellant from 1331 Fairmont resembled any of the stolen property, nor did he hear from appellant on November 27 or 28. He also testified that he did not see appellant buying anything from a truck in the vicinity of 1331 Fairmont Street on either of those days.

■ Appellant specifically argues that "the trial court's failure to instruct the jury that 'intent to defraud' is an element of receiving stolen property was reversible error, since it allowed the jury to convict [him] without adequate proof of mens rea." Section 22–3832 reads in pertinent part:

> A person commits the offense of receiving stolen property if that person buys, receives, possesses, or obtains control of stolen property, knowing or having reason to believe that the property was stolen, *with intent to deprive another of the right to the property or a benefit of the property.*

D.C.Code § 22–3832 (1989 Repl.) (emphasis added).[1] Appellant argues that the mens rea requirement has been carried over from the former statute on receiving stolen property, D.C.Code § 22–2205 (1981) (repealed 1982). The former statute prohibiting receiving stolen property read in pertinent part:

> Any person who shall, *with intent to defraud,* receive or buy anything of value which shall have been stolen ... knowing or having cause to believe the

1. Appellant cites *German v. United States,* 525 A.2d 596, 604–06 (D.C.), *cert. denied,* 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987), as support for his contention that § 22–3832 impermissibly allows convictions for receiving stolen property without requiring evidence of a guilty mind. The *German* court considered a different statute, D.C.Code § 22–3831 (1989 Repl.), trafficking in stolen goods, which like D.C.Code § 22–3832 requires the defendant to know or ot have reason to believe that the goods are stolen. Although the court recognized that because the goods need not actually be stolen (a concession to law enforcement efforts), the argument could be made that persons innocently engaged in the sale of property would face a higher risk of conviction, the court correctly pointed out that such an argument is rendered impotent by the requirement that a person know or have reason to believe that the goods are stolen. *Id.* at 606. Appellant's several stories as to the source of the stolen goods apparently persuaded the jury that he either knew or had reason to know that the property was stolen.

same to be so stolen ... [shall be punished by fine, imprisonment, or both]. D.C.Code § 22–2205 (1981) (repealed 1982) (emphasis added). Appellant reasons accordingly that the trial judge was required to instruct the jury that in order to convict him of receiving stolen property, they must find he had the specific "intent to defraud." However, we see no material difference in the intent required by the two statutes. *See Williams v. United States*, 281 A.2d 293, 294 (D.C.1971). Therefore, the trial judge need not specifically instruct the jury that an element of § 22–3832 is "intent to defraud."

■■■ To properly instruct the jury on the intent required for conviction of receiving stolen property, a trial judge may either use the appropriate standard jury instruction on specific intent or, where the statute itself sets out the specific intent, he may substitute the statutory language. *Marcinski v. United States*, 479 A.2d 856, 861–62 (D.C.1984), *cert. denied*, 469 U.S. 1224, 105 S.Ct. 1216, 84 L.Ed.2d 357 (1985). The standard instruction on specific intent reads:

> Specific intent requires more than a mere general intent to engage in certain conduct or to do certain acts. A person who knowingly does an act which the law forbids, *intending with bad purpose either to disobey or disregard the law*, may be found to act with specific intent.

Criminal Jury Instructions for the District of Columbia, No. 3.01 (3d ed. 1978) (emphasis added). The trial judge recited this instruction to the jury, replacing the underscored language with the similar phraseology, "intending to disobey or in conscious disregard of the law." The trial judge also

quoted § 22–3832 to the jury by instructing them that the government was required to prove appellant had the specific "intent to deprive another of the right to the property or the benefit of the property." Viewing the jury instructions in their entirety, *Carter v. United States*, 475 A.2d 1118, 1124 (D.C.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985), we are satisfied that the trial judge more than adequately instructed the jury on the specific intent required for receiving stolen property pursuant to D.C.Code § 22–3832.

Accordingly, the judgment is

*Affirmed.*

STEADMAN, Associate Judge, concurring:

I agree that under the circumstances here, the instructions were adequate to warrant affirmance. I think, however, that potential difficulty could be lessened by amplification of the statutory requirement (briefly discussed in footnote 1 of the *per curiam* opinion) that the defendant act "knowing or having reason to believe that the property was stolen," D.C.Code § 22–3832 (1989).[1] In my view, that requisite mental state should be interpreted and defined as a subjective one, focussing on the defendant's actual state of mind, and not simply on what a reasonable person might have thought.[2] This would comport with the specific intent requirement recognized in the *per curiam* opinion, as well as with the principle that neither simple negligence nor naivete ordinarily forms the basis of felony liability. *See Morissette v. United States*, 342 U.S. 246, 251, 72 S.Ct. 240, 244, 96 L.Ed. 288 (1952) (crimes tradi-

---

1. The same requirement is set forth in the preceding section 3831, dealing with trafficking in stolen property, and is indeed the only provision in that section relating to a wrongful state of mind (in contrast to section 3832's additional requirement that the defendant have the "intent to deprive another" of his property rights). Our decision in *German v. United States*, cited in footnote 1 of the *per curiam* opinion, interprets section 3831 and states that the "criminality of one's behavior is sufficiently predictable under the 'reason to know' standard because of the specific intent requirement." 525 A.2d at 606. Such a criminal specific intent, however, can be

found in the language of the statute only by construing the "reason to know" standard as a subjective one.

2. Of course, the latter bears directly as evidence on the issue whether the defendant had a like state of mind. *See Thomas v. United States*, 557 A.2d 1296, 1300 (D.C.1989) (although a defendant must be subjectively aware of risk for a malicious destruction of property conviction, evidence that a reasonable person would have been aware of the risk is "often the best available evidence" of defendant awareness).

tionally are "generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand").