*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CF-1332

ALPHONSO N. OWENS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-18008-11)

(Hon. Heidi M. Pasichow, Trial Judge)

(Argued March 18, 2014                                    Decided May 15, 2014)

*William T. Morrison* for appellant.

*David B. Goodhand*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman* and *Brandon S. Long*, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and EASTERLY, *Associate Judges*, and FERREN, *Senior Judge*.

FISHER, *Associate Judge*:  After a jury trial, appellant Alphonso Owens was

convicted of receiving stolen property (RSP)[1] and unauthorized use of a vehicle

---

[1] D.C. Code § 22-3232 (2011 Supp.).

(UUV).[2] On appeal, he argues that a supplemental instruction responding to a note from the jury constituted reversible error. Although the instruction was not an ideal explanation of the subjective knowledge required for RSP, appellant has not shown plain error, and we affirm his convictions.

## I. Factual Background

On September 14, 2011, officers from the Metropolitan Police Department's (MPD) auto theft unit located a 1996 gold Nissan Maxima that had been reported stolen on September 12. They stopped the Maxima and arrested appellant, who was the driver. During the stop, MPD officers observed that the Maxima's steering wheel column was damaged and held together by duct tape, that the metal around the passenger-side door lock had been pulled back and had a jagged edge, and that a side vent window was "broken out" and covered with duct tape. The officers also noted that the key in the Nissan's ignition read "BMW" and had been shaved down to a one-inch point. When asked how he had obtained the Maxima, appellant said that he was test-driving it. He explained that an acquaintance had delivered the car that morning, offering to sell it and telling appellant that the damage was due to an accident and subsequent remedial measures. Appellant told

_____

[2] D.C. Code § 22-3215 (2011 Supp.).

police that he has "experience knowing about stolen cars" and conceded that he "should have used better judgment."[3]

## II. The Jury Instructions on RSP

The version of the statute in effect at the time of this offense stated that "[a] person commits the offense of receiving stolen property if that person buys, receives, possesses, or obtains control of stolen property, *knowing* or *having reason to believe* that the property was stolen, with intent to deprive another of the right to the property or a benefit of the property." D.C. Code § 22-3232 (a) (2011 Supp.) (emphasis added). The trial court used the standard jury instructions for RSP. *See* Criminal Jury Instructions for the District of Columbia, No. 5.301, Receiving Stolen Property and Attempted Receipt of Stolen Property (5th ed. rev. 2010). In order to meet the third element, the trial court explained, the government must prove that "[a]t the time the defendant [acquired the property], he knew or had reason to believe that the property was stolen."

---

[3] Appellant did not testify, but his thirty-minute interview with police was recorded and played in its entirety during trial.

After a day of deliberation, the jury asked, "[d]oes #3 'reason to believe' mean he had a lower degree of certainty that the property had been stolen by someone? OR does it mean there were logical 'reason[s] to believe' the property was stolen, but those reasons did not register with him?" With the approval of both parties,[4] the trial court instructed that "Element No. 3 . . . requires that the defendant either knew or had reason to believe that the property was stolen. In terms of the reason to believe, that determination should be based upon what a reasonable person would have believed under the facts and circumstances as you find them."

### III. Applying the Statute

Appellant contends that the trial court's supplemental instruction, referring to "what a reasonable person would have believed," impermissibly diminished the government's burden and allowed the jury to use a negligence standard to convict him. While acknowledging that this was "certainly not a pristine instruction," the

---

[4] Appellant's counsel emphasized that "there's no diminution or reduction in terms of the reasonable doubt that the government must overcome in order to meet that element." The judge told counsel that the jury was "asking whether there's a difference in the state of mind required for either ['knew' or 'had reason to believe']." After discussion, appellant's counsel twice agreed with the proposed instruction.

government emphasizes that the trial court's supplemental "instruction correctly directed the jurors' attention to appellant's actual state of mind, and informed them that they could not convict appellant of RSP unless they found either he personally knew of the Maxima's stolen nature or he personally 'had reason to believe' that the Maxima was stolen[.]"

"Our primary goal [in statutory construction] is to ascertain and give effect to the intent of the legislative body that drafted the language." *Tenley & Cleveland Park Emergency Comm. v. District of Columbia Bd. of Zoning Adjustment*, 550 A.2d 331, 334 n.10 (D.C. 1988). Here, the plain language of the RSP statute distinguishes between "knowing" and "having reason to believe." Moreover, the legislative history of the statute states that "[t]he phrase 'having reason to believe' is intended to have the same meaning as that given to the phrase 'having cause to believe' under the current law. It is not required that th[e] offender have actual knowledge." D.C. Council, Report on Bill 4-133 at 54 (Feb. 12, 1981). While discussing an identically-worded element of the proposed trafficking in stolen property statute,[5] the same report notes that "it is intended that the offender's

---

[5] This legislative proposal was subsequently enacted and provided that "[a] person commits the offense of trafficking in stolen property if, on 2 or more separate occasions, that person traffics in stolen property, knowing or having reason to believe that the property has been stolen." 29 D.C. Reg. 3984 (1982).

knowledge or belief may be inferred from the circumstances of the offense and it is not required that the offender know for a fact that the property is stolen. Rather, it is sufficient if the offender had 'reason to believe' that the property is stolen." *Id.* at 49. It plainly was the legislature's intent to reach beyond actual knowledge. The challenge for us is to give effect to this legislative purpose without permitting a jury to convict a defendant for mere negligence. *See DiGiovanni v. United States*, 580 A.2d 123, 126 (D.C. 1990) (Steadman, J., concurring) (invoking "the principle that neither simple negligence nor naiveté ordinarily forms the basis of felony liability").

The "reason to believe" language, or something close to it, has been a part of our RSP statute for a long time. *See* D.C. Code § 22-2205 (1953 Supp.) (it is a crime to "receive or buy anything of value which shall have been stolen[,] . . . knowing or *having cause to believe* the same to be so stolen") (emphasis added). Thus, it is surprising that this court has done little to explain what the phrase "having reason to believe" means. Given the frequency with which this offense is prosecuted, it is time for us to address this issue of statutory construction.

Many jurisdictions employ statutory language similar to ours,[6] but they do not agree on its meaning. *Compare State v. Korelis*, 541 P.2d 468, 469 (Or. 1975) ("A finding of either actual knowledge or a belief by the defendant that the property was stolen is essential to a conviction for theft by receiving."), *with Davis v. State*, 586 So. 2d 817, 819 (Miss. 1991) ("If a person has knowledge from facts and circumstances which should convince a reasonable person that property has been stolen, in such situation the rule is that, in a legal sense, he knew the property was stolen." (citations omitted)). Even where a jurisdiction's statute requires "knowledge," the definition of guilty knowledge is often expansive. *See, e.g.*, *Jordan v. State*, 148 A.2d 292, 300 (Md. 1959) ("it is not necessary that [guilty] knowledge be direct or actual, it being sufficient if circumstantial and inductive,

---

[6] Ariz. Rev. Stat. Ann. § 13-1802(A)(5) ("having reason to know that the property was stolen"); Ark. Code Ann. § 5-36-106(a)(2) ("[h]aving good reason to believe the property was stolen"); Ky. Rev. Stat. Ann. § 514.110(1) ("having reason to believe that it has been stolen"); Mich. Comp. Laws Ann. § 750.535(1) ("having reason . . . to believe, that the . . . property is stolen"); Minn. Stat. Ann. § 609.53, subd. 1 ("having reason to know the property was stolen"); Miss. Code. Ann. § 97-17-70(1) ("having reasonable grounds to believe it has been stolen"); N.C. Gen. Stat. Ann. § 14-71.1 ("having reasonable grounds to believe the same to have been feloniously stolen"); Ohio Rev. Code Ann. § 2913.51(A) ("having reasonable cause to believe that that property has been obtained through commission of a theft offense"); Or. Rev. Stat. Ann. § 164.095(1) ("having good reason to know that the property was the subject of theft"); W. Va. Code Ann. § 61-3-18 (having "any stolen goods or other thing of value" the defendant "has reason to believe has been stolen").

and the receiver believed or reasonably suspected, from the circumstances of the transaction, that the property was stolen").

Our most helpful examination of this issue is found in a concurring opinion by Judge Steadman, who concluded that the "requisite mental state [for RSP] should be interpreted and defined as a subjective one, focusing on the defendant's actual state of mind, and not simply on what a reasonable person might have thought." *DiGiovanni*, 580 A.2d at 126 (D.C. 1990) (Steadman, J., concurring). "Of course," he added, "the latter ['what a reasonable person might have thought'] bears directly on the issue whether the defendant had a like state of mind." *Id.* at 126 n.2; *see also Charles v. United States*, 371 A.2d 404, 406 (D.C. 1977) (the government must show "that the individual receiving the property had guilty knowledge that it was stolen").

We agree that the mental state for RSP is a subjective one. But the task of discerning a defendant's knowledge (or "reason to believe") usually requires a jury to rely on reasonable inferences rather than direct proof. *Charles*, 371 A.2d at 410 ("absent acknowledgment by the accused himself, his awareness of a particular fact is never capable of direct proof and must be inferred from other evidence"). For example, "a jury reasonably may infer the requisite state of mind for the

offense of receiving stolen property where evidence reveals defendant's unexplained (or unsatisfactorily explained) possession of recently stolen property." *Blackledge v. United States*, 447 A.2d 46, 50 (D.C. 1982); *see Barnes v. United States*, 412 U.S. 837, 843-46 (1973) (this inference is "deeply rooted in our law"). It also is appropriate for the jury to consider what a reasonable person would have believed to inform its analysis of the defendant's own state of mind. *See Thomas v. United States*, 557 A.2d 1296, 1300 (D.C. 1989) ("a showing that a reasonable person would have been aware of a risk is often the best available evidence that the defendant was aware of it").

"Guilty knowledge cannot be established by demonstrating mere negligence or even foolishness on the part of the defendant, but it may be satisfied by proof that the defendant deliberately closed his eyes to what otherwise would have been obvious to him." *United States v. Gallo*, 543 F.2d 361, 369 n.6 (D.C. Cir. 1976); *see Charles*, 371 A.2d at 410 ("[A] distinction has been recognized between guilty knowledge of a fact or circumstance and the culpable avoidance of such knowledge (i.e., a failure to inquire)[.]") (discussing whether "knowing" language of offense of maliciously destroying stolen property requires proof of a higher order than the "having cause to believe" language of RSP)).

Following these principles, we reiterate that a jury may draw reasonable inferences about the defendant's knowledge from the facts and circumstances of the case. In some RSP cases, perhaps, the government will simplify matters by proceeding on a theory of actual knowledge. If the government does argue more broadly that the defendant had "reason to believe" the property was stolen, we recommend that the following instruction be given to explain the elements of the offense:

> Element No. 3 requires that the defendant either knew or had reason to believe that the property was stolen. This state of mind is a subjective one, focusing on the defendant's actual state of mind, and not simply on what a reasonable person might have thought. In determining whether the government has met its burden of proving the defendant's subjective state of mind, you may consider what a reasonable person would have believed under the facts and circumstances as you find them. But guilty knowledge cannot be established by demonstrating mere negligence or even foolishness on the part of the defendant. It may, nonetheless, be satisfied by proof beyond a reasonable doubt that the defendant deliberately closed his eyes to what otherwise would have been obvious to him.

## IV. Plain Error Analysis

"When a party fails to raise a timely objection to an instruction, we will review that claim of error under the plain error standard." *Williams v. United States*, 858 A.2d 984, 990 (D.C. 2004). "Under [that] standard, appellant must show not only that the error was plain or obvious, but also that the error affected substantial rights and resulted in a clear miscarriage of justice." *Id.* at 992 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). "[T]he plain-error exception is cold comfort to most defendants pursuing claims of instructional error." *Wilson v. United States*, 785 A.2d 321, 326 (D.C. 2001) (citation omitted). [7]

Appellant has not met his burden of demonstrating plain error. *See Lowery v. United States*, 3 A.3d 1169, 1173 (D.C. 2010) ("[A]ppellant bears the burden of persuasion on each of the four prongs of the plain error standard."). He primarily faults the trial court's explanation that "reason to believe" is "based on what a reasonable person would have believed under the facts and circumstances as you

---

[7] We reject appellant's claim that the trial court's supplemental instruction was structural error. "Only a limited class of constitutional errors qualify as structural errors." *In re Taylor*, 73 A.3d 85, 100 (D.C. 2013). Unlike *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993), where a reasonable doubt instruction was constitutionally deficient, the alleged error in this case concerns only one element of one of the charged offenses. *See Neder v. United States*, 527 U.S. 1, 8 (1999) (structural "errors 'infect the entire trial process,' and 'necessarily render a trial fundamentally unfair'").

find them." Appellant contends that this instruction lowered the government's burden and impermissibly introduced a simple negligence standard.

We agree that this supplemental instruction was error. It improperly focused on what a reasonable person would have believed without emphasizing the jury's duty to determine appellant's subjective knowledge. Additionally, because it was given in specific response to a note from the jury, the supplemental instruction created a significant risk that the jury would apply the wrong standard when assessing appellant's state of mind. *See Yelverton v. United States*, 904 A.2d 383, 388 (D.C. 2006) ("[A] supplemental charge given in response to a question from a deliberating jury must be viewed in a special light." (citation omitted)). But we have not previously said much about the subjective knowledge requirement for RSP, and reasonable minds therefore could debate whether the trial court's error was plain or obvious. However, we will assume without further discussion that the first two prongs of plain error have been established here.

Even if the supplemental instruction was an "obvious" error, appellant cannot show that it affected his substantial rights or resulted in a clear miscarriage of justice. First, there was powerful evidence supporting the inference that appellant actually knew the Maxima was stolen. The condition of the car and the

unique nature of the "key" were clear indications that the car had been stolen. Moreover, appellant was in possession of recently stolen property. Second, in order to convict appellant of UUV, the jury had to find that "[w]hen he took, used or operated the vehicle, [appellant] knew that he . . . did so without the consent of the owner." Thus, the guilty verdict for UUV reflects a finding, beyond a reasonable doubt, that appellant had subjective knowledge that the Maxima was stolen. Because of the overwhelming proof against him and the finding of subjective knowledge underlying the UUV verdict, appellant has not carried his burden of demonstrating plain error.

## V. Conclusion

The judgment of the Superior Court is hereby

*Affirmed.*