Marion E. CHARLES, Appellant,

v.

UNITED STATES, Appellee.

No. 10175.

District of Columbia Court of Appeals.

Argued Oct. 7, 1976.

Decided March 17, 1977.

David B. Ortman, Washington, D. C., appointed by the court, for appellant.

Judith Hetherton, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, William D. Pease, and Bette E. Uhrmacher, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before YEAGLEY, HARRIS and MACK, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted of single counts of receiving stolen property (felony), unauthorized use of a vehicle, and malicious destruction of stolen property. D.C. Code 1973, §§ 22–2205, –2204, and –2208. He contends that the trial court erroneously denied his motions for judgments of acquittal as to the charges of receiving and maliciously destroying stolen property, and that the court erred in its instructions to the jury as to the doctrine by which guilt may be inferred from the possession of recently stolen property. He further contends that the sentence imposed for the destruction of property conviction exceeded the statutory maximum. While we remand for resentencing on that count, we affirm the judgments appealed from in all other respects.

I

A taxicab was stolen on December 31, 1974. On the evening of January 23, 1975, Metropolitan Police Officers George Stewart and Leonard Kania, patrolling in a marked cruiser, noticed a cab with its left headlight out and signaled for it to stop. The driver, who the officers testified was the cab's sole occupant, attempted to evade the officers. During the ensuing chase, the suspect vehicle traveled at speeds up to 75 m.p.h., occasionally on the wrong side of the road, through crowded city streets. The cab passed two other officers, who joined

the chase. The fleeing driver soon lost control; the cab sheared off a traffic light pole and slammed into a parked car, sustaining extensive damage. The chase continued on foot for a short distance, but ended when the driver, appellant, was apprehended by Officer Stewart. At no time from the beginning of the incident to appellant's arrest had either the vehicle or its driver been out of the officers' sight.

Appellant acknowledged that he had been in the cab on the evening in question, but he insisted that he had been merely a passenger on his way home from work. He professed to have had no knowledge of the pursuit by the officers, and testified that when the collision occurred, the driver pointed a gun at him and ordered him to "get out" or "run." His account was contradicted by the testimony of the four police officers. They stated that they had maintained constant visual contact with the suspect, that only one person had been in the cab (and only one emerged from the wreck), and that that person had been appellant. Appellant's motions for judgments of acquittal were denied; the jury returned verdicts of guilty on each of the charged offenses.

## II

■ Conviction for the crime of receiving stolen property requires that the government establish four elements: (1) that the property was received, (2) that at the time of its receipt the property was stolen, (3) that the individual receiving the property had guilty knowledge that it was stolen, and (4) that he had a fraudulent intent in receiving the property. *Brown v. United States,* D.C.App., 304 A.2d 21 (1973). While appellant does not dispute the fact that the taxicab was stolen property, he challenges the denial of his motion for a judgment of acquittal on the grounds that the circumstances were inadequate to permit the inference of the necessary knowledge and intent from the fact of his possession of the stolen taxicab. We disagree.

■ It is well settled that the trier may infer from the fact of unexplained (or un-satisfactorily explained) possession of recently stolen property the mental state necessary to complete criminal offenses such as receiving stolen property.

"[P]ossession of the fruits of a crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight, unless explained by the circumstances or accounted for in some way consistent with innocence." [*Williams v. United States,* D.C.App., 281 A.2d 293, 294 (1971), quoting *Rugendorf v. United States,* 376 U.S. 528, 536–37, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964), quoting *Wilson v. United States,* 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090 (1896). *See Blue v. United States,* D.C.App., 270 A.2d 508 (1970). *See also Barnes v. United States,* 412 U.S. 837, 843–46, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).]

Appellant challenges the application of such an inference on the ground that there was an insufficient showing of a nexus between him and the original criminal conversion of the cab. He points to the fact that the government's proof established only a relatively brief period of possession by him, and argues that during that period the cab was no longer "recently" stolen property. Further, he contends that there was nothing to suggest that he was in any way connected with the theft of the cab on December 31.

■ It is true that many of the cases in which the inference has been applied have involved circumstances strongly suggesting that the defendant actually participated in the theft of the property. *See, e.g., Williams v. United States, supra; United States v. Coggins,* 140 U.S.App.D.C. 134, 136–37, 433 F.2d 1357, 1359–60 (1970). However, neither the offense of receiving stolen property nor the application of the disputed inference requires such a connection. Although a conviction for a violation of § 22–2205 must be based on proof that the defendant had both guilty knowledge of the status of the property in question (*i. e.,*

that it had been stolen) and fraudulent intent in taking possession of the item, the accused nevertheless may be found guilty despite ignorance of the circumstances of the original conversion and innocence of any participation therein.[1] *See Weisberg v. United States*, 49 U.S.App.D.C. 28, 258 F. 284 (1919). *Cf. Inman v. United States*, 100 U.S.App.D.C. 150, 243 F.2d 256 (1957), *cert. denied*, 358 U.S. 888, 79 S.Ct. 132, 3 L.Ed.2d 116 (1958). On the facts before us, appellant's possessory relationship with the cab was more than adequate to permit the jury to infer such knowledge [*cf. Reed v. United States*, D.C.App., 312 A.2d 775, 777 (1973)], and the lapse of 23 days since the theft was insufficient to preclude such an inference as a matter of law.[2] *See Fleming v. United States*, D.C.App., 310 A.2d 214, 216–18 (1973); *United States v. Johnson*, 140 U.S. App.D.C. 54, 56, 60 n. 40, 433 F.2d 1160, 1162, 1166 n. 40 (1970).

■ Taking the evidence in the light most favorable to the government, as we must [*Hamling v. Unites States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)], the record establishes the following factual basis for the inference: at the time of the incident, the cab was stolen property; the driver was the sole occupant of the vehicle; when signaled to stop by officers in a marked police cruiser, the driver attempted to escape, traveling at high speed to the great peril of life and property; and the driver was appellant. *Cf. In re T. T. B.*, D.C.App., 333 A.2d 671, 673 (1975). Such

circumstances provided a more than ample foundation for submission to the jury of the question of whether at the time in question appellant had the required knowledge and intent. *See United States v. Lumpkin*, 145 U.S.App.D.C. 162, 168, 448 F.2d 1085, 1091 (1971); *Curley v. United States*, 81 U.S. App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). His motion for a judgment of acquittal properly was denied. *See Fleming v. United States, supra*, at 218; *Simon v. United States*, D.C.App., 293 A.2d 859, 861 (1972).

### III

Appellant contends that the court erred in the phrasing of its instructions to the jury on the circumstances under which guilt (*i. e.*, the accused's knowledge that the property had been stolen and his fraudulent intent in taking possession thereof) properly may be inferred from the possession of recently stolen property. It is his position that the charge was fatally defective for its failure specifically to inform the jurors that they were at liberty not to draw such an inference, and for its alleged effect of shifting the burden of proof to the accused. We disagree.

■ The disputed instructions resulted from an exchange between counsel and the trial judge in which the defense initially made a general objection to the "Redbook" instruction on the inference.[3] The court proposed its own instruction, modeled along

---

1. The various forms of larcenous taking of property are distinct from offenses of trafficking in or receiving the fruits of such a taking. *See Weisberg v. United States*, 49 U.S.App. D.C. 28, 258 F. 284 (1919); *United States v. Johnson*, 140 U.S.App.D.C. 54, 57, 433 F.2d 1160, 1163 (1970). In *United States v. Fench*, 152 U.S.App.D.C. 325, 470 F.2d 1234 (1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973), the circuit court observed that the disputed inference frequently has been applied to the crime of receiving stolen property, and explained: "It has long been recognized that in cases involving crimes of a larcenous nature, the inference which may properly be drawn from the fact of exclusive possession of recently stolen property is that the possessor actually participated in the taking *or* that the

possession is 'guilty possession,' unless such possession is otherwise satisfactorily explained. More specifically, courts have affirmed the application of this inference in cases involving the receipt of stolen property." *Id.* at 334, 470 F.2d at 1243 (footnote omitted).

2. Here the jury properly was instructed that the longer the interval between the theft of the property and the time when it was shown to have been in the defendant's possession, the weaker the inference. *See United States v. Johnson, supra* note 1, at 60 n. 40, 433 F.2d at 1166 n. 40; *Travers v. United States*, 118 U.S. App.D.C. 276, 280, 335 F.2d 698, 702 (1964).

3. D.C. Bar Ass'n, *Criminal Jury Instructions for the District of Columbia*, No. 3.09 (2d ed. 1972).

the principles enunciated in *Fleming v. United States, supra.* Defense counsel then informed the court of his preference for the standardized charge, and thereafter made timely objections to the court's use of its own formulation. Counsel's protests, however, were merely general challenges to the instructions as a whole, and failed to specify the exact grounds for the objection. *See* Super.Ct.Cr.R. 30; *Villaroman v. United States,* 87 U.S.App.D.C. 240, 241, 184 F.2d 261, 262 (1950). Accordingly, our review of the disputed charge is limited to the question of whether the instruction constituted plain error affecting substantial rights.[4] *Watts v. United States,* D.C.App., 362 A.2d 706, 708–09 & n. 3 (1976) (en banc); *United States v. Howard,* 139 U.S.App.D.C. 347, 351, 433 F.2d 505, 509 (1970); *cf. Fleming v. United States, supra,* at 218. *See* Super.Ct. Cr.R. 52(b).

In *Fleming v. United States, supra,* we explained that an instruction on the possible inference of guilt from the possession of recently stolen property must be such as to provide the jury with an understanding that:

> (1) [it is] not *required* to draw any inferences; (2) possession of recently stolen property does not shift the burden of proof from the government which must prove beyond a reasonable doubt each of the essential elements of the offense; and (3) the inference is forbidden if the accused's possession of the property is satisfactorily explained by independent evidence or by his own testimony. [310 A.2d at 217–18 (footnote omitted). *See Pendergrast v. United States,* 135 U.S. App.D.C. 20, 32–35, 416 F.2d 776, 788–91, *cert. denied,* 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969).]

Our examination of the instructions given by the trial court convinces us that the charge conformed to these principles and suffered none of the defects asserted by appellant.

The jurors were not told that they must or should draw the disputed inference if they found that the government's proof established merely the possession of recently stolen property. Rather, in charging the jury the court made consistent use of permissive language such as "you may" or "you are permitted to infer." *Cf. Pendergrast v. United States, supra,* at 32–33, 416 F.2d at 788–89. Appellant, however, suggests that coming from the trial judge, such permissive phraseology may have been improperly construed by the jury as having mandatory overtones, particularly in the absence of an express instruction that the inference need not be drawn. He further urges that in making some relatively minor departures from the language and format of the charges discussed in *Fleming* and *Pendergrast, supra,* the charge operated to shift the burden of proof to the accused.

 The propriety of the trial court's instructions is to be determined from the whole of the charge, rather than through the scrutiny of isolated sentences or passages. *See Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Watts v. United States, supra,* at 709; *United States v. Martin,* 154 U.S.App.D.C. 359, 363, 475 F.2d 943, 947 (1973). While perhaps the better practice would have been for the court to make specific reference to the jury's freedom not to draw the inference, the record reveals that the trier of fact received ample guidance as to the proper scope of its authority and the nature of its responsibility.[5]

---

4. Upon learning of the court's proposed instruction, defense counsel responded: "I would prefer, if the Court is going to give [an instruction on the inference of guilt], I would prefer the one in the [standard] jury instructions. * * * Would you note my objection to that." Such a vague and general objection is not sufficient either to assist the trial court in determining whether an amendment of the charge is warranted, or to preserve the point

for appeal. *See United States v. Johnson, supra,* at 58 n. 27, 433 F.2d at 1164 n. 27.

5. The ease with which the asserted defect might have been corrected, had defense counsel specified the nature of his difficulty with the proposed charge, makes apparent the wisdom of the rule requiring that any objection to jury instructions be expressed in specific terms. *Cf. Villaroman v. United States, supra,* at 241, 184 F.2d at 262.

On several occasions the court specifically instructed the jury on the presumption of innocence and the fact that the burden remained at all times on the government to prove every element of the offense beyond a reasonable doubt. The court's charge contained express reference to the critical threshold question of whether, on the whole of the evidence, any application of the inference was warranted. The jurors also were instructed that before such an inference could be drawn, they first must conclude that the government had established beyond a reasonable doubt that (1) appellant had been in possession of the cab, (2) the vehicle recently had been stolen, and (3) no satisfactory explanation existed for such possession.[6] *United States v. Coggins, supra,* at 138–39, 433 F.2d at 1361–62. *See United States v. Johnson, supra,* at 61, 433 F.2d at 1167. Moreover, the fact that the disputed charge was not a verbatim repetition of previously approved language is not dispositive. Such charges, whether endorsed by this court or promulgated in standardized form, merely serve to provide the trial court with guidance in the exercise of its general authority over the phraseology of jury instructions, and should not be viewed as automatically threatening error for any departure, however insignificant, from the precise structure of the approved charge. On the record before us,[7] we conclude that the jury was instructed adequately and that appellant's assertions of error are without merit.[8] *Cf. Fleming v. United States, supra,* at 216–20; *Pendergrast v. United States, supra,* at 32–35, 416 F.2d at 788–91.

## IV

Appellant's final argument concerns the charge of maliciously destroying stolen property.[9] He contends that there was insufficient evidence as to his knowledge that the cab was stolen or that he acted "maliciously" within the meaning of § 22–2208. He points to the fact that while the offense of receiving stolen property (§ 22–2205) requires only that an accused "know[ing] or have[ing] cause to believe" that the item was stolen, that of maliciously destroying stolen property specifies that the defendant must "know" of such fact. Appellant further suggests that the government's contention that he was using the vehicle in an attempt to escape is logically inconsistent with the notion that in wrecking the car he acted with the requisite malice. He further argues that the sentence imposed is defective as exceeding the maximum allowable

---

6. The court reminded the jury that the government did not allege that appellant had been involved in the theft of the cab. It also made proper reference to the fact that the inference of guilt would be available only if the evidence failed to suggest an explanation for appellant's *possession of the vehicle,* and that such explanation need not be provided by the defendant himself.

7. As the circuit court observed in *United States v. Coggins, supra,* at 140, 433 F.2d at 1363, claims of inadequate or improper instructions must be examined against the "backdrop of the evidence." *See United States v. Martin, supra,* at 364, 475 F.2d at 948 ("strong evidence supports a finding of no prejudice").

8. We have carefully examined the full text of the court's instructions and find no merit to appellant's claim that their effect was to free the government from its constitutional burden of proving beyond a reasonable doubt every element of the charged offenses. *Cf. Cupp v. Naughton, supra,* 414 U.S. at 147–49, 94 S.Ct. 396; *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In *Barnes v. United States, supra,* the Supreme Court recognized that the practical effect of the disputed inference may be to shift to the defendant the burden of going forward with the evidence. Nevertheless, it concluded that such a result is not constitutionally defective where, as here, the inference satisfies the reasonable doubt standard, and there is a rational connection between the facts inferred (*i. e.,* guilty knowledge and fraudulent intent) and the fact the prosecution must establish in order to shift the burden of going forward to the accused (*i. e.,* possession of recently stolen property). 412 U.S. at 846 n. 11, 93 S.Ct. 2357. *See also James v. United States,* D.C.App., 350 A.2d 748 (1976).

9. D.C. Code 1973, § 22–2208, provides:

Whoever shall maliciously destroy anything of value of the amount or value of $100 or upward which shall have been stolen, knowing the same to have been stolen, shall suffer imprisonment for not less than one year nor more than three years.

under that section. Only his latter point has merit.

The question of the proper construction to be given the element of mens rea contained in § 22–2208 is one of first impression. The trial court apparently viewed the issue of the accused's knowledge that the property had been stolen as being the same under both § 22–2205 and § 22–2208, and instructed the jury that the government was required to prove beyond a reasonable doubt that the defendant "knew or had cause to believe that the automobile was stolen." While a distinction has been recognized between guilty knowledge of a fact or circumstance and the culpable avoidance of such knowledge (*i. e.*, a failure to inquire) [*see* Perkins, Criminal Law 771–79 (2d ed. 1969)], appellant cites no authority for his contention that the proof of knowledge required for conviction under § 22–2208 is necessarily of a higher order than that called for under § 22–2205, and we have found none. We are mindful that absent acknowledgment by the accused himself, his awareness of a particular fact is never capable of direct proof and must be inferred from other evidence. *See United States v. Avant*, 107 U.S.App.D.C. 192, 194–95, 275 F.2d 650, 652–53 (1960). We therefore would be reluctant to adopt a construction which would have the practical effect of limiting successful prosecution to those cases involving such an admission. However, this issue is not squarely before us, as appellant's challenge is not directed to the propriety of the court's charge, but rather to the sufficiency of the evidence underlying the denial of his motion for a judgment of acquittal.

 As a general proposition, the defendant's knowledge and intent in such a case are questions for the trier of fact. *See White v. United States*, D.C.App., 300 A.2d 716, 719 (1973). Even where the particular statute speaks only of "knowing" that the property has been stolen, it has been held that such knowledge may be inferred from the unexplained possession of the property. *See, e. g., Barnes v. United States, supra;* [10] *Simon v. United States, supra. See generally* Perkins, Criminal Law, *supra*, at 327–29. We conclude that on the issue of appellant's knowledge of the cab's status, the trial court's instruction was not plainly erroneous [Super.Ct.Cr.R. 30 and 52(b)], and that on the facts before us there was sufficient evidence to support the submission of the question to the jury. *See Fleming v. United States, supra*, at 218; *Simon v. United States, supra*, at 861; *Curley v. United States, supra*, at 392, 160 F.2d at 232.

On the question of malice, the trial court charged the jury that the government must prove that the accused acted "with intent to injure or destroy the property and for a bad or evil purpose, and not merely negligently or accidentally." [11] Although appellant suggests that it is "obvious" that one normally would not intend to destroy the vehicle in which one was traveling, he offers no authority for his contention that the circumstances would not permit the jury to find the existence of the specified state of mind. The government urges that the question of whether malice was logically precluded by appellant's instincts for self-survival was for the jury to decide, and that

10. In *Barnes*, the Supreme Court upheld a conviction under a federal statute prohibiting the possession of United States Treasury checks "knowing them to be stolen." Pointing to the ancient origin of the inference of such knowledge from the fact of unexplained possession, it rejected a due process challenge to the jury instruction that "[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been sto-

len." 412 U.S. at 840 n. 3, 93 S.Ct. at 2360. *See also Rugendorf v. United States, supra*, 376 U.S. at 536–37, 84 S.Ct. 825 [inference applicable to establish "knowing" receipt and concealment of stolen property in violation of 18 U.S.C. § 2315 (1970)].

11. The charge tracked the construction given to the element of malice required by D.C. Code 1973, § 22–403 (malicious burning, destruction, or injury of another's movable property) in *Nichols v. United States*, D.C.App., 343 A.2d 336, 341 (1975).

the jurisprudence arising from the common law offense of "malicious mischief" provides the appropriate analytical framework for construing the element of mens rea required by § 22–2208.[12]. Pointing to the traditional definition of malice in crimes such as homicide, *i. e.*, "an unjustified, unexcusable, and unmitigated man-endangering state-of-mind" (*see* Perkins, Criminal Law, *supra,* at 46–48), the government apparently would have us adopt a construction requiring proof of a similarly extreme "property-endangering state-of-mind." *See id.* at 334–39; *Duncan v. State,* 5 Md.App. 440, 248 A.2d 176, 178–79 (1968). *Cf. Hurt v. United States,* D.C.App., 337 A.2d 215, 218 (1975); *United States v. Hinkle,* 159 U.S.App.D.C. 334, 336, 487 F.2d 1205, 1207 (1973).

 In light of the common legislative origin of §§ 22–403 and –2208,[13] we properly may draw guidance from those cases which have construed the concept of malice as employed in the former statute. In *Paige v. United States,* D.C.Mun.App., 183 A.2d 759 (1962), we concluded that the malice required for conviction for the "malicious burning, destruction, or injury of another's movable property" [§ 22–403] "may be inferred from the intentional wrongdoing." In *Nichols v. United States,* D.C.App., 343 A.2d 336, 341 (1975), we further explained that such intentional wrongdoing must be accompanied by a bad or evil purpose, and that it would be insufficient if the injury were merely the result of negli-

gence or accident. Such an interpretation is necessary to distinguish the mental state required for malice-based offenses from that involved in crimes the conviction for which demands proof of no more than general intent or criminal negligence. *Cf.* 54 C.J.S. *Malicious Mischief* § 3b (1948); 52 Am.Jur.2d *Malicious Mischief* § 7 (1970); Perkins, Criminal Law, *supra,* at 752–60, 766–71. The basically awkward terms such as a "wicked heart" or a "bad or evil purpose" should not be overemphasized; a finding that the accused intended the actual harm which resulted from his wrongful act is not an essential prerequisite to the existence of malice. All that is required is a conscious disregard of a known and substantial risk of the harm which the statute is intended to prevent. *Cf.* 1 R. A. Anderson, Wharton's Criminal Law & Procedure § 62 (1957). Professor Perkins has offered the following definition of malice (Perkins, Criminal Law, *supra,* at 769–70):

[M]alice in the legal sense imports (1) the absence of all elements of justification, excuse or recognized mitigation, and (2) the presence of either (a) an actual intent to cause the particular harm which is produced or harm of the same general nature, or (b) the wanton and willful doing of an act with awareness of a plain and strong likelihood that such harm may result.[14]

As these principles are basically consistent with the objectives of statutes such as § 22–2208,[15] and with the limited law of this

---

12. While the most obvious statutory descendant of the principles embodied in the common law concept of malicious mischief is that found in D.C. Code 1973, § 22–403 (malicious burning, destruction, or injury to another's movable property; *cf. Nichols v. United States, supra* note 11), the particularized form of intent labeled "malice" appears frequently throughout other Code sections dealing with willful injury to various forms of property. *See, e. g.,* D.C. Code 1973, § 22–401 (arson); § 22–402 (burning one's own property with intent to injure or defraud); § 22–404 (burning of fences, woods, or crops); § 22–3107 (destroying or defacing public records); § 22–3108 (cutting down or destroying growing things); § 22–3109 (destroying boundary trees); § 22–3114 (destroying cemetery railing or tomb); § 22–3118 (mak-

ing water impure); and § 22–3119 (placing obstruction on or displacement of railway tracks).

13. Act of March 3, 1901, §§ 848 and 828 (ch. 854, 31 Stat. 1327, 1324).

14. "Any mystery supposed to be associated with [the concept of malice] will disappear completely if two points are constantly kept in mind: First, that in the absence of justification, excuse or recognized mitigation, it is malicious to intend to do what constitutes the *actus reus* of the crime in question; second, that a state of mind *may* be malicious even without an actual intent to bring about such a result." Perkins, Criminal Law, *supra* at 766.

15. Appellant suggests that the purpose of § 22–2208 is to discourage the willful destruction of

jurisdiction concerning the concept,[16] we believe they provide an appropriate standard by which the mental element of "malicious destruction of stolen property" is to be determined. *Cf. Duncan v. State, supra.*

■ Appellant has not challenged the court's instructions to the jury on the required showing of mens rea under § 22–2208, and we conclude that the charge which was given presents no plain error affecting substantial rights. *See* Super.Ct. Cr.R. 30 and 52(b). Rather, as noted, appellant contends that the evidence was insufficient to permit a finding of the necessary mental state, and thus that the court erred in denying his motion for a judgment of acquittal. Accordingly, the question for our determination is whether, taking the evidence and the reasonable inferences therefrom in the light most favorable to the government, it would have been possible for a reasonable person to conclude that the acts which culminated in the destruction of the stolen cab connoted a knowing and malicious state of mind. We conclude that it was possible.

In denying appellant's motion, the trial court rejected his argument that the crash had been the result of inadvertence or negligence.[17] It concluded that appellant's high speed flight through congested city streets presented a sufficient foundation for permitting the jury to decide whether the accused had acted maliciously. *Cf. Belton v. United States,* 127 U.S.App.D.C. 201, 204–05, 382 F.2d 150, 153–54 (1967). We agree. There was ample evidence from which the trier could infer that appellant's conduct was a "wanton or willful doing of an act with awareness of a plain and strong likelihood" that the harm which in fact occurred (*i.e.,* the wrecking of the stolen vehicle) might result. Appellant's motion was properly denied. [*Cf. Fleming v. United States, supra,* at 218], and the jury's conclusion will not be disturbed. *See Manago v. United States,* D.C.App., 331 A.2d 335, 336 (1975); *Patterson v. United States,* D.C.App., 301 A.2d 67, 70 (1973).

■ Finally, appellant points out that while § 22–2208 provides that the malicious destruction of stolen property shall be punished by imprisonment for not more than three years (*see* note 9, *supra* ), the sentence imposed was for a term of from 20 months to five years. Accordingly, while we affirm the judgments appealed from in all other respects, we remand the case to permit resentencing on this count consistent with the terms of the statute.

*So Ordered.*

the evidence of a larcenous offense. He also appears to imply that there is some redundancy in his conviction for the receipt, unauthorized use, and destruction of the same vehicle. In light of the fact that the ancestral common law offense of malicious mischief arose from a concern for the security of private property, in addition to preventing the frustration of subsequent prosecution, we recognize the further objective of preserving for their eventual return to the rightful owners the fruits of larceny and related offenses. Such a legitimate societal interest is quite distinct from those underlying the prohibition of the unlawful taking or trafficking in property stolen from another [e. g., D.C. Code 1973, § 22–2205 (receiving stolen property)], and properly may be addressed by a separate criminal sanction. *Cf. United States v. Wilder,* 150 U.S.App.D.C. 172, 463 F.2d 1263 (1972); *Weisberg v. United States, supra.*

16. *See, e.g., Hurt v. United States, supra,* at 218 (§ 22–2401, first-degree murder); *Nichols v. United States, supra* (§ 22–403, malicious destruction of movable property); *Carter v. United States,* 141 U.S.App.D.C. 259, 262–64, 437 F.2d 692, 695–97 (1970), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 655 (1971) (§ 22–2403, second-degree murder); *United States v. Hinkle, supra,* at 1207 (second-degree murder); *Paige v. United States, supra* (§ 22–403, malicious destruction of another's movable property).

17. The court remarked: "You're suggesting that the Government's evidence . . . that the defendant is driving somewhere between 60 and 75 miles per hour in a city setting, on 18th street, while [being pursued] by a marked police scout car with siren and lights on, in what I am sure the inference being that he was escaping from the police, and he then crashed that automobile as a result of this high-speed chase would not make out the word 'maliciously' as that term is used legally . . . .. No, sir, no way one could possibly suggest that that's [just] negligent conduct. It defies all description to suggest that it's negligence . . . .."