**Janet A. CARSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 87–611.

District of Columbia Court of Appeals.

Argued April 19, 1988.
Decided April 5, 1989.

---

was informed by one of her children that a fuse needed replacement. While looking for a fuse, appellant noticed that eight dollars were missing from her dresser drawer. She called her children—thirteen-year-old Cornell, six-year-old Everett, five-year-old Angelica and eight-year-old Charmaine Schmidt—to her bedroom; each child denied knowing anything about the missing money. At that point she went downstairs, and as she returned upstairs, she picked up an electrical cord; she later testified that she routinely used the cord to discipline the children. She again asked the children about the missing money, and they again denied any knowledge of the money's disappearance. Appellant then whipped each of the children several times.

The next day, at the school attended by Everett, Angelica, and Charmaine, school officials noticed marks and bruises on the children. Detective Harmon of the Metropolitan Police Department went to the school and took the three children to Children's Hospital. Everett's abrasions were cleansed and bandaged; the other two children received no treatment.

Appellant was subsequently charged with three counts of cruelty to children (one count of cruelty to Everett Carson, one count of cruelty to Angelica Carson and one count of cruelty to Charmaine Schmidt) in violation of D.C.Code § 22–901 (1981). She waived her right to a jury trial, and after a trial before the court, she was found guilty on two counts (cruelty to Everett and cruelty to Angelica). Appellant was sentenced to thirty days' imprisonment on each count, the sentences to run consecutively and suspended in favor of one year of unsupervised probation. On appeal, Carson claims that the evidence was insufficient to support her conviction. We affirm.

Edwin C. Brown, Jr., for appellant.

John M. Seabright, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Chevy Chase, Md., at the time the brief was filed, Michael W. Farrell, Elizabeth Trosman, and Daniel M. Cisin, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, BELSON, and TERRY, Associate Judges.

MACK, Associate Judge:

On June 4, 1985, Janet Carson arrived home from work at about 3:45 p.m. and

I.

■ Before considering appellant's claim that the evidence was insufficient to support her conviction, we must first determine the *mens rea* required for conviction

under D.C.Code § 22–901.[1] We conclude that the offense is a general intent crime, which also requires a showing of malice. We reach this conclusion for three reasons. First, the statute has been interpreted as requiring an "evil mind," and in other contexts "evil mind" is equated with general intent and malice. Second, this interpretation gains support from Maryland's interpretation of its similar common law based statute. Finally, this interpretation advances the essential purpose of the statute.

Judicial interpretation of D.C.Code § 22–901 has been limited. In *Mullen v. United States*, 105 U.S. App.D.C. 25, 263 F.2d 275 (1959), the United States Court of Appeals for the District of Columbia Circuit held that the terms "abuse" and "wilfully mistreat" as used in the statute "call[ ] for something worse than good intentions coupled with bad judgment," and incorporate "the requirement of an evil state of mind...." *Id.* at 26, 263 F.2d at 276. Some years later, in *United States v. Thomas*, 148 U.S. App.D.C. 148, 459 F.2d 1172 (1972), the court held that willfulness in its "evil or bad-purpose aspect" or in its "evil mind connotation" was an essential element of the offense. *Id.* at 153, 459 F.2d at 1177. The cases would seem to teach that cruelty to children is something more than a general intent crime and some-

thing less than a specific intent crime. There are no other cases interpreting D.C. Code § 22–901.[2]

In other contexts, this court has equated the terms "evil intent" and "malice." *See, e.g., United States v. Bradford*, 344 A.2d 208 (D.C.1975) (manslaughter requires malice or "evil design"). This court has noted that a showing of bad or evil purpose is "necessary to distinguish the mental state required for malice-based offenses from that involved in crimes the conviction for which demands proof of no more than general intent or criminal negligence." *Charles v. United States*, 371 A.2d 404, 411 (D.C.1977). Thus, if cruelty to children requires proof of something more than a general intent, that something more would seem to be malice.

■ Our conclusion is further supported by the statute's common law roots. D.C. Code § 22–901 is a codification of the common law crime of assault on children, *Beausoliel v. United States*, 71 App.D.C. 111, 115, 107 F.2d 292, 296 (1939), and absent a statutory definition of an element of a crime, the common law definition controls. The common law of the District of Columbia is rooted in the common law of Maryland as it existed in 1801. *See* D.C. Code § 49–301 (1981). The current Mary-

---

1. Section 22–901 provides in pertinent part:

   Any person who shall torture, cruelly beat, abuse, or otherwise wilfully maltreat any child under the age of 18 years ... shall be deemed guilty of a misdemeanor, and, when convicted thereof, shall be subject to punishment by a fine of not more than $250, or by imprisonment for a term not exceeding 2 years, or both.

   The Criminal Jury Instructions for the District of Columbia, No. 4.18 (3d ed. 1978), define the elements of the offense as follows:
   1. That the defendant tortured, cruelly beat, abused or otherwise maltreated a child;
   2. That at the time of the incident, the child was under the age of 18 years; and
   3. That the defendant acted willfully, that is, with an evil intent or with bad purpose to maltreat the child. It is not enough that you find that the defendant exercised bad judgment or acted unreasonably. Rather, it is necessary that you find that the defendant was motivated by an evil intent or state of mind in committing the acts which constitute the offense.

2. There are also few cases interpreting similar statutes. Convictions for cruelty to children are routinely affirmed. The decisions tend to be conclusory in nature with little discussion of the elements of the crime or the sufficiency of the proof. *See Jackson v. State*, 178 Ga.App. 378, 343 S.E.2d 122 (1986) (evidence sufficient to support a conviction for cruelty to children where appellant's wife testified that appellant had beat their two-year-old son causing a knot on his head, a scratch on his face and a swollen left hand); *People v. Tomlianovich*, 161 Ill.App. 3d 241, 112 Ill.Dec. 737, 514 N.E.2d 203 (1987) (evidence supported conviction of cruelty to children where repeated paddling of child resulted in buttocks bruised to the point of hematoma); *People v. Johnson*, 133 Ill.App.3d 881, 88 Ill.Dec. 868, 479 N.E.2d 481 (1985) (appellant's conviction affirmed where appellant had whipped his son with extension cord with such force that two red marks on son's back were still visible more than twelve hours after inflicted). *See also Daniel v. State*, 179 Ga.App. 54, 345 S.E.2d 143 (1986); *Dean v. State*, 178 Ga. App. 783, 344 S.E.2d 672 (1986).

land cruelty to children statute is a codification of Maryland common law and it defines abuse as "cruel or inhumane treatment or [the] result of [a] malicious act or acts." *See MD.CODE ANN. [CRIMES & PUNISHMENT] § 35A (1987). Since the two statutes stem from the same common law roots, the malice standard in the Maryland statute lends support to our interpretation.*

Finally, our interpretation gives effect to the policy concerns of the statute. In only rare instances will a parent have the specific intent to assault or abuse a child. A general intent standard would too greatly invade the legitimate domestic authority of parents. A general intent standard with the additional showing of malice, however, offers children the protection the statute envisioned while at the same time not undermining the domestic authority of parents.

## II.

Having determined the *mens rea* required for conviction of cruelty to children, we must now determine whether the government's proof was sufficient to establish the requisite *mens rea* in this case. Appellant concedes that the record supports the trial court's finding of general intent. However, she argues that the government failed to prove that she acted with malice. She argues that according to her undisputed testimony, she was motivated not by an evil intent, but rather by "a concern for [her] children's welfare and upbringing." At first blush, the record supports her argument as to motivation.

The government argues, however, that to find malice "all that is required is a conscious disregard of a known and substantial risk of the harm which the statute is intended to prevent." *Charles, supra,* 371 A.2d at 411. Quoting the trial court's findings, the government argues that the evidence witnesses "a reckless disregard of the well-being of these two very young children" and that appellant acted in a manner "which is inevitably going to cause what did happen here, which is impermissible types of injuries."

Malice is a rather slippery concept, not amenable to precise definition. Authors of the Model Penal Code chose not to use the term. Perkins and Boyce in their treatise on criminal law explain that "malice in the legal sense imports (1) the absence of all elements of justification, excuse or recognized mitigation, and (2) the presence of either (a) an actual intent to cause the particular harm which is produced or harm of the same general nature, or (b) the wanton and wilful doing of an act with awareness of a plain and strong likelihood that such harm may result." PERKINS & BOYCE, CRIMINAL LAW at 860 (3d ed. 1982). What does this mean in the context of cruelty to children? Simply put, we believe that a parent acts with malice when a parent acts out of a desire to inflict pain rather than out of genuine effort to correct the child, or when the parent, in a genuine effort to correct the child, acts with a conscious disregard that serious harm will result.

Obviously our definition stresses the mental state of the parent. A parent acts maliciously if the parent acts out of a desire to inflict pain. A parent might also possess the requisite malice, however, even if the parent acted out of a genuine effort to correct the child but chose impermissible means to do so. If a parent chose to discipline, for example, by striking the child with a steel pipe, the parent would be acting with a "conscious disregard of a known and substantial risk of the harm which the statute is intended to prevent." *Charles, supra,* 371 A.2d at 411. In these circumstances, the parent could not have been unaware that considerable harm would result, and in acting nevertheless, the parent is driven by the same motivation that is present when one acts out of a desire to inflict pain.

We would also note that proof of malice will likely always be difficult in cruelty cases. Direct evidence will be rare. In most cases, the only person who can speak to the issue of motive will be the defendant, and the defendant has an obvious incentive to cast his or her actions in a favorable light. Most likely, proof of mal-

ice will be circumstantial—the manner of punishment and the nature of the injuries themselves. It may be that such evidence contradicts evidence of proper motive; for example, where a child is hospitalized as a result of parental discipline, it might belie the argument that the parent acted out of a genuine desire to correct the child. The presence of an impermissible desire to inflict pain may be inferred from the resulting harm. The other possibility is that such evidence, irrespective of the subjective mental state of the parent, can establish that the parent acted with a "conscious disregard of a known and substantial risk of the harm which the statute is intended to prevent." *Id.* In this situation not only the form but the length of punishment becomes significant. For example, striking the child with a dangerous object would indicate a conscious disregard of risk, but so would "spanking" or imposed isolation if carried on to the degree or length of time that would be expected to cause physical or mental injury. The severity of the injury speaks directly to the issue.

In this case, appellant's testimony regarding her motive was not directly contradicted. The government relied basically on the nature of the wounds and the manner of the punishment to establish malice. The government introduced pictures of the injuries sustained by the children and also pointed to the ages of the children, and the fact that appellant used an electrical cord to whip the children as evidence that appellant acted with evil intent, or at least as evidence that appellant acted with a conscious disregard that serious harm (of the nature which would flow from an evil intent) would result.

From our perspective in this court, we cannot conclude that the evidence justifies the inference that appellant acted out of a desire to inflict pain rather than out of a genuine effort to correct the children. Appellant testified that she acted out of a legitimate desire to correct the children and the trial court apparently credited that testimony.[3]

Further, we do not believe that the punishment was so excessive or the manner so egregious as to lead to the conclusion that appellant acted with a conscious disregard of the serious harm which would result. The discipline was of short duration. The mother testified that the whippings lasted perhaps a minute. As to the manner of discipline, reasonable people might disagree as to whether whipping with an electrical cord is in itself offensive or no more offensive than the use of commonly employed devices or methods used to exact discipline. We would only note that appellant testified that because the children were jumping around and that because she was eight months pregnant and therefore awkward, the cord made contact on the children's bodies where it otherwise may not have done so.

■ However, when the manner of punishment, the length of punishment, the nature of the injuries and the ages of the children are viewed as a whole, we cannot say that the trial court was plainly in error in concluding that appellant acted with conscious disregard of the harm which resulted. We realize that there are no bright lines here. We have examined the photographs (which appellant's counsel has accurately described as being greatly enlarged) and certainly at least two of the pictures support the trial court's determination.

The determination as to whether a parent maliciously disciplines a child is factually specific, and a trial court deserves great deference in its findings. The trial court, as it properly should have, considered all the circumstances, examined the evidence

---

3. The trial court mused that appellant had an intent to inflict pain in the course of administering "what she perceived to be punishment." It concluded that while there was no intent to inflict punishment resulting in permanent injury, the injuries were unreasonable and disproportionate to appropriate discipline given the ages of the children and the occasion. The trial court also noted that appellant had "high stan-

dards" for her children—"she didn't want them to steal; she didn't want them to use drugs." The court found that appellant had worked hard to make a good life for herself and her children. She had left the welfare rolls and become a policewoman, "supporting all those children on her own." We echo the trial court's sentiment that appellant had a genuine and deep-felt love and concern for the children.

and weighed the credibility of the witnesses. We are loath to substitute our judgment for that of the trier-of-fact.

Accordingly, appellant's conviction is

Affirmed.

BELSON, Associate Judge, concurring:

I concur in the result of the court's opinion, and join in Part I in which it concludes that conviction of the crime of cruelty to children requires a showing of malice. I write separately for two reasons: first, to describe more fully the evidence of beatings and resultant injuries to the children, because such a description will help explain why conviction was appropriate here, and, second, to state my understanding of why the record supports the trial judge's findings of fact and determinations of guilt.

The government's evidence included the testimony of the police officer who observed Everett receiving treatment at Children's Hospital, nine photographs of Charmaine, Everett, and Angelica taken while they were being treated, and two statements appellant gave the police later that afternoon. The photographs show numerous bruises and abrasions all of which are in the characteristic "loop" configuration caused by the doubling of an electrical extension cord.

The marks on six-year-old Everett were the most severe. They spanned from the back of his neck, down his right arm, to his right thigh. Seven marks were clustered around his right elbow. On his thigh was a large area of about a dozen loop-shaped lacerations and dark bruises. There were unhealed sores in at least four places where the skin was broken. The photographs of five-year-old Angelica show a laceration on her left arm, a welt on her upper left arm, and three large abrasions as well as several bruises on her inner right thigh. The marks on Charmaine were less severe. Although the photographs show approximately twelve "loops" on her right thigh, they are much fainter and less discolored than those found on her brother and sister, and none of them shows the skin broken.

Based on the government's evidence and appellant's own testimony, the trial court found appellant guilty of cruelty to Everett and Angelica, but not guilty of cruelty to Charmaine.

The majority chooses as the appropriate framework for the analysis of whether malice was shown the following formulation set forth by Perkins and Boyce in their treatise at p. 860:

malice in the legal sense imports (1) the absence of all elements of justification, excuse or recognized mitigation, and (2) the presence of either (a) an actual intent to cause the particular harm which is produced or harm of the same general nature, or (b) the wanton and wilful doing of an act with awareness of a plain and strong likelihood that such harm may result.

This court has previously used this definition of malice, *Charles v. United States*, 371 A.2d 404, 411 (D.C.1977), and I agree that it is appropriate. I disagree, however, with the majority opinion's implicit holding that the trial court erred in finding the actual intent referred to in part 2(a) of the formulation, and also with the majority opinion's equivocation regarding the trial court's finding of what is termed "conscious disregard" of the serious injury that would attend such a beating, this being the alternative means of making the affirmative showing that must underpin a conclusion that a defendant's act was malicious, expressed in part 2(b) of the formulation.

In reviewing the trial court's findings in a criminal proceeding, this court is to affirm unless reversal is required because of an error of law or because it appears that the trial court's "judgment is plainly wrong or without evidence to support it." D.C. Code § 17-305 (1981). We must apply this standard of review to the trial court's finding that the appellant

had an intent to inflict pain on [them] as what she perceived to be punishment. And I think she had the intent and I'm satisfied she had the intent to inflict pain and—and injuries, not permanent injury but injuries that were unreasonable and

disproportionate to what was appropriate given the age of these children and the occasion.

It is clear that the nature of the injuries inflicted by extension cord on Everett and Angelica and the evidence of the circumstances of their infliction are more than sufficient to insulate the trial court's findings from reversal upon application of the statutorily prescribed standard of review. Appellant's administration of a protracted series of blows with the looped electrical cord, severe enough to leave outlines and open sores on a child's body a day later, furnishes strong support for the trial court's finding. I disagree, therefore, with the majority's statement that "we cannot conclude that the evidence justifies the inference that appellant acted out of a desire to inflict pain rather than out of a genuine effort to correct the children." (Majority opinion at 1080.) Nor can I join in the majority's treatment of the second alternative means of establishing malice, *i.e.*, by "conscious disregard" of the serious harm that would result, although I agree with the majority's end result—affirmance. After making what amounts to a finding of fact: "we do not believe that the punishment was so excessive or the manner so egregious as to lead to the conclusion that appellant acted with a conscious disregard of the serious harm which would result" (majority opinion at 1080), the opinion goes on to affirm the trial court's express contrary finding.

Instead of doing that, I would simply affirm the trial court's careful findings of fact and determination of guilt by a straightforward application of the appropriate standard of review, *i.e.*, that the trial court's judgment was not plainly wrong or without evidence to support it. For the foregoing reasons, I concur in the result of affirmance.