Nico DAUPHINE, Appellant,

v.

UNITED STATES, Appellee.

No. 12–CM–39.

District of Columbia Court of Appeals.

Submitted June 27, 2013.
Decided Aug. 29, 2013.

Harry A. Suissa, Silver Spring, MD, was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Chrisellen Kolb, and Margaret Barr, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and THOMPSON, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

After a nonjury trial, appellant was found guilty of attempted cruelty to animals in violation of D.C.Code §§ 22–1001, –1803 (2001). On appeal she contends the evidence was legally insufficient, and specifically that recent amendment of the statute changed it to a specific intent offense, thus rendering the evidence insufficient to convict. Being unpersuaded by these contentions, we affirm.

## I.

At trial, the government's evidence revealed that for approximately five years prior to the date of the incident, Ms. Frances Sterling, a resident of the Park Square Apartments, had been feeding neighborhood cats by setting a bowl of cat food between plants located near the entrance to her building. On March 2, 2011, Ms. Sterling left the food in the bowl as she always did, making sure that the area was clean. The next morning, on her way to the store, Ms. Sterling checked the food and noticed a yellow or white powdery substance. She called the Washington Humane Society (WHS) to report the incident and WHS dispatched Officer Daniel D'Eramo to collect samples and take pictures of the scene. Officer D'Eramo placed the samples in an evidence bag, which was sent to Michigan State University for testing.

Dr. Wilson K. Rumbeiha, a veterinary toxicologist, examined the powdery substance and determined that it was bromadialone, an anticoagulant rodenticide that kills rodents by inhibiting their blood-clotting mechanisms. Dr. Janet Rosen of the Washington Animal Rescue League testified regarding the effects bromadialone would have on an animal if ingested. She described how the animal would suffer from internal bleeding, and would become very weak and have difficulty breathing as well as experiencing joint swelling and lameness. In her words, "it's not a pretty way to die."

In addition, the government introduced a surveillance video that showed appellant walking towards the bushes where the food bowls were kept, reaching into a black bag and then placing something in the vicinity of the food bowls. Appellant, testifying in her own defense, admitted that she did approach the food dishes, as shown on the video, but denied putting anything into the food dishes, claiming she was only cleaning the area to keep rats away.[1]

After hearing evidence, the trial court found that after Ms. Sterling cleaned the cat food area at 2:00 p.m. on March 2, no one else, other than Ms. Sterling and appellant, was proximate to the area until the additional substance on the food was discovered by Ms. Sterling the following day. This finding was supported by the testimony of the government witnesses, all of whom the court found to be credible, as well as photographic and video evidence

---

1. Dr. Nico Dauphine has written several scholarly articles that generally paint feral cats in urban areas as a pest and nuisance, with titles such as "Pick One, Outdoor Cats or Conservation" and "Cat Predation." Prior to the incident, she had exchanged many emails with the apartment building manager, complaining about the stray animal situation and asking if there was anything she could do to remedy it.

which the court was able to view and assess for itself. The court determined that appellant's claim that she went to the cat food bowl to clean the area did not "have the ring of truth," as the court was able to view the surveillance video and conclude that appellant had walked purposefully towards the cat food bowl, put on gloves, reached into a black bag and then moved her hand towards the cat food bowl, actions "far more consistent with placing something there than cleaning the area."

The court found that the government had proven the charge of attempted cruelty to animals beyond a reasonable doubt, and noted that the issue of malice in this case was a "red herring," because "there wouldn't be any way for anybody to poison animals that would eat cat food in a non-malicious fashion except some extraordinary circumstance which doesn't naturally arise in this case."

## II.

D.C.Code § 22–1001(a)(1) (2001) provides, in pertinent part, that any person who "knowingly ... tortures, torments, ... or mutilates, any animal, or knowingly causes or procures any animal to be so ... tortured, tormented, ... or mutilated," will be guilty of a misdemeanor. Prior to 2001, the language of the statute was essentially the same except the word "knowingly" was omitted.[2] This court has not had occasion to apply this statute since its language was amended, and we take the opportunity now to clarify that our jurisprudence remains intact.

Here, appellant contends that there was insufficient evidence for the fact finder to conclude that she committed the crime knowingly with malice as required. Appellant acknowledges that our decision in Re-

galado v. United States, 572 A.2d 416 (D.C.1990), established the mens rea for this crime as general intent with malice, but contends that because the statute changed, Regalado no longer controls. Appellant posits that the addition of the term "knowingly" changes the statute from a crime of general intent with malice into a specific intent crime.

### A.

The primary case in this area of the law is Regalado, supra. Appellant in that case was convicted of cruelty to animals, then codified at D.C.Code § 22–801 (1989 Repl.), for beating a puppy while he hung it upside down from a tree. Appellant's defense was that he was disciplining the dog for urinating inside and that the beating as testified to by an eye witness did not happen. Regalado, supra, 572 A.2d at 418–19. He appealed his conviction, claiming that the evidence was insufficient because the government "failed to prove that he had the specific intent to harm the puppy." Id. at 419.

The statute, as then-written, did not expressly specify a mens rea, and the trial court instructed the jury that it had to find appellant had "willfully" mistreated the animal, borrowing language from the instruction for cruelty to children. Id. at 419 (citing D.C.Code § 22–901 (1989 Repl.)). This court had previously held that cruelty to children was a "general intent crime ... requiring proof of malice." Id. at 419 (citing Carson v. United States, 556 A.2d 1076, 1078 (D.C.1989)). Thus, we stated cruelty to children requires more than general intent, but less than specific intent, which "offers children the protection of the statute ... while ... not undermining the

---

**2.** The main focus of the 2000 amendment was to broaden the definition of cruelty to animals and to enhance the penalty, adding a felony provision, which is not applicable in this case.

D.C. Council, Report on Bill 13–473, the "Freedom From Cruelty to Animals Protection Amendment Act of 2000" at 2 (May 11, 2000).

domestic authority of parents." *Id.* (internal quotation marks omitted).

Similar to the statute against cruelty to children, the statute prohibiting cruelty to animals recognizes the need for flexibility, permitting an owner to discipline an animal while preventing "beating[s] and the needless infliction of pain accompanied by a cruel disposition." *Id.* at 420. While making clear that children are obviously deserving of more protection than animals, the *Regalado* court noted that like the statute in place to protect children, the statute protecting animals was "not intended to place unreasonable restrictions on the infliction of such pain as may be necessary for the training or discipline of an animal." *Id.* at 420 (citation omitted). Thus, the court rejected appellant's claim that specific intent was required, holding that cruelty to animals only required a showing of general intent with malice. *Id.*

Appellant contends that *Regalado* no longer applies because the amended language in the statute changed the crime of cruelty to animals from general intent with malice to a crime of specific intent. Our review of the Committee Reports discloses that the legislative history does not address appellant's contention. The stated purpose of the 2000 amendment was to add a felony provision and to broaden the definition of cruelty to animals to include "cruelly chaining" an animal. D.C. Coun-

cil, Report on Bill 13–473, the "Freedom from Cruelty to Animals Protection Amendment Act of 2000" at 2 (May 11, 2000).[3]

### B.

 The addition of "knowingly" to the statute does not alter our reliance on the holding in *Regalado*. *Regalado* established the *mens rea* for cruelty to animals as general intent with malice. It is well settled that the general intent to commit a crime means the intent to do the act that constitutes the crime. *Stroman v. United States*, 878 A.2d 1241, 1245 (D.C.2005) ("general intent ... may be inferred from doing the act that constituted" the crime (internal quotation and citation omitted)). The meaning of malice is malleable. This court recently endeavored to explain the meaning of legal malice in the context of malicious destruction of property in *Russell v. United States*, 65 A.3d 1172 (D.C. 2013). After a thorough discussion of the roots of its usage,[4] *Russell* recognized that malice incorporates two levels of intent, specific and "conscious disregard." *Id.* at 1183. This is reflected in the jury instructions for malicious destruction of property and in the formal definition of legal malice this court adopted in *Charles v. United States*, 371 A.2d 404, 411 (D.C.1977).[5] For our purposes, since *Regalado* made clear cruelty to animals is a general intent

---

**3.** Most of the public testimony included in the report dealt with the need for a felony provision. The Council did not mention the addition of the word "knowingly" in the "Purpose" section nor in the "Section–By–Section Analysis" section, indicating it considered the addition of "knowingly" to be a technical amendment. Report on Bill 13–473, *supra*, at 2, 9. Moreover, the Council demonstrated its ability to differentiate between levels of intent by adding the felony provision, which made it a felony to perform or procure certain violent acts towards animals "with the intent to commit serious bodily injury or death to an animal." D.C.Code § 22–1001(d).

**4.** *See generally Russell, supra,* 65 A.3d at 1182–84.

**5.** "(M)alice in the legal sense imports (1) the absence of all elements of justification, excuse or recognized mitigation, and (2) the presence of either (a) an actual intent to cause the particular harm which is produced or harm of the same general nature, or (b) the wanton and willful doing of an act with awareness of a plain and strong likelihood that such harm may result."
*Charles, supra,* 371 A.2d at 411 (quoting Perkins, Criminal Law, 769–70 (2d ed.1969)).

crime, the addition of malice to general intent merely means that the actor had no "justification, excuse or recognized mitigation" for his actions and that he was at least aware of the "plain and strong likelihood that [the resulting] harm may result." *Russell, supra,* 65 A.3d at 1184 (quoting *Charles, supra,* 371 A.2d at 411).

■ In reviewing the evidence in this case the trial judge found malice, concluding, "there wouldn't be any way for anybody to poison animals that would eat cat food in a non-malicious fashion except some extraordinary circumstance which doesn't naturally arise in this case." We express no opinion regarding whether that observation is correct, but we are satisfied here that the evidence produced in this case was sufficient to show malice, i.e., that appellant "acted without justification or excuse" by putting poison in the neighborhood cats' bowl. That is because, during trial, she testified that she was merely cleaning the area when viewed on film and took pains to deny that she placed anything in the bowl (testimony that the trial court discredited), rather than acknowledge her action and assert that it was justified because (as her brief in appeal suggests) feral cats are a health hazard. The trial judge could reasonably find that appellant acted without justification in pursuing the action which she followed.

### C.

■ In our view the change in the statutory language did not transform the crime of animal cruelty from a general intent with malice crime to a specific intent crime. However, where the government charges an individual with attempt, as it did here, the government must demonstrate that the defendant possessed the "intent to commit the offense allegedly attempted." *Smith v. United States,* 813 A.2d 216, 219 (D.C.2002) (citing *Wormsley v. United States,* 526 A.2d 1373, 1375 (D.C. 1987)). Therefore, when charging attempted cruelty to animals, the government must prove that the accused had the intent to commit the crime of animal cruelty and had performed some act towards the commission of that crime beyond mere preparation. *See Stroman, supra,* 878 A.2d at 1245 (citing *Riley v. United States,* 647 A.2d 1165, 1172 (D.C.1994)).

■■ Here, the government has met its burden to prove appellant acted with intent to commit the crime of cruelty to animals and had performed some act towards its commission. Because this case was tried without a jury, we review the trial court's findings of facts and law; "the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C.Code § 17–305 (2001). Given the total of the evidence which was presented in this instance, we conclude that a reasonable finder of fact could find guilt beyond a reasonable doubt and that there was evidence to support the findings made by the trial judge in this case.[6]

6. For purposes of the felony cruelty to animals' portion of the statute, the language of the statute treats "undomesticated and dangerous animals such as rats, bats, and snakes" differently than other types of animals. D.C.Code § 22–1001(d). The portion of the statute describing the misdemeanor offense contains no such distinction. Our opinion should not be read as holding that a person is guilty of misdemeanor cruelty to animals when (for example) he uses rat poison to poison rats. Civilized societies have struggled with rodent control for centuries, and a portion of the District of Columbia Code is devoted to that topic. *See* D.C.Code §§ 8–2101.01 through 8–2103.05 (2001). Although we need not decide the issue in this case, it might be difficult for the government to prove that one who poisons rats acts with malice—that is, without justification or excuse."

For the foregoing reasons, the judgment of the trial court is hereby

*Affirmed.*